**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIGHTHOUSE LIFE INSURANCE** | : | **CIVIL ACTION** |
| **COMPANY** | : | |
| | : | |
| **v.** | : | **NO.  22-485** |
| | : | |
| **ANTOINETTE WALKER WALTON,** | : | |
| **PRESTON HARPER, KADEENA** | : | |
| **FULTON** | : | |

# MEMORANDUM

**MURPHY, J.**                                            **February 13, 2024**

Brighthouse Life Insurance Company asks us to declare that Antoinette Walker-Walton is the sole beneficiary of I-Dean Fulton's life insurance policy.  Because there is no genuine dispute of material fact, we will.

Mr. Fulton applied for and was issued a Brighthouse life insurance policy.  Ms. Walker-Walton, his then-fiancée, was the policy's sole beneficiary.  A few weeks after Mr. Fulton applied for the policy, he submitted a second application.  The second one named Preston Harper (his brother) and KaDeena Fulton (his daughter) as co-beneficiaries.  Brighthouse eventually denied Mr. Fulton's second application.

But an administrative error caused the second application to be incorrectly submitted under the same case number as the first.  When Mr. Fulton died, Brighthouse's internal system showed Ms. Fulton and Mr. Harper as the policy's co-beneficiaries.  Ms. Walker-Walton, Ms. Fulton, and Mr. Harper lodged competing claims for the policy's death benefit.

After some investigation — and still unaware of its own systems error — Brighthouse filed an interpleader action against Ms. Walker-Walton, Ms. Fulton, and Mr. Harper to sort things out.  Interpleader would allow the potential claimants figure out who gets the death

benefit.  But fact discovery uncovered the aforementioned administrative error, which confirmed — in Brighthouse's view — that Ms. Walker-Walton is the correct beneficiary. Unsurprisingly, Ms. Walker-Walton agrees.  As a result, Brighthouse requested leave to amend its complaint and now asks that we declare Ms. Walker-Walton the sole beneficiary.

Based on the undisputed material facts, we agree with Brighthouse and grant its request. We also grant Brighthouse summary judgment with respect to the defendants' counterclaims.

## I.   **Facts**[1]

Brighthouse issues life insurance policies.  *See* DI 55-2 ¶ 2.  On November 4, 2009, Mr. Fulton applied for one.  *See id.* ¶ 1.  He "designated his 'fiancée,' [Ms.] Walker-Walton, as sole primary beneficiary."  *Id.*; *see also* DI 55-3 Ex. A.[2]  Brighthouse approved Mr. Fulton's application, set a policy date of January 26, 2010, and issued the policy on January 27, 2010.

---

[1] We rely on the undisputed facts submitted by Brighthouse, the undisputed evidence in the record, and — to the extent there is a disputed, material fact — the non-movant's version of the facts.  *See* DI 55-2, 55-3, 57-14.  Ms. Walker-Walton responded directly to Brighthouse's statement of undisputed facts, *see* DI 57-14, but Ms. Fulton and Mr. Harper did not.  Ms. Fulton and Mr. Harper argue only that Brighthouse's statement of undisputed material facts "is replete with inaccuracies."  DI 56 at 4 n.1.  However, they do not state the specific inaccuracies, much less abide by Rule 56's requirement that such assertions be supported by record citations.

[2] References to lettered exhibits in Brighthouse's appendix are the exhibits to Matthew Duncan's certification in support of summary judgment.  *See* DI 55-3.  Mr. Duncan is an associate chief underwriter for Brighthouse.  DI 55-3, Certification of Matthew Duncan, ¶ 1.  For all other materials included in Brighthouse's appendix, our citations use the pagination supplied by the CM/ECF docketing system.

At her deposition, Ms. Walker-Walton testified that she and Mr. Fulton would have submitted and "filled . . . out" his life insurance application "together."  DI 56-4 at 26 (ECF); *see* DI 55-2 ¶ 45.  Ms. Walker-Walton testified that she and Mr. Fulton would have received the application from Lamont Brown — her claims agent.  *See* DI 56-4 at 26-27 (ECF).  Yet Mr. Brown, the purported claims agent for Mr. Fulton's policy, testified that he did not know Mr. Fulton.  *See* DI 55-3 at 103 (ECF) ("Q. We're here about this policy that was owned by an insured [named] I-Dean Fulton did you know him?  *A. No.*" (emphasis added)).

*See* DI 55-2 ¶ 2; DI 55-3 Ex. B.[3]  The policy had a $1,000,000 death benefit.  *See* DI 55-3 Ex. B.

Shortly after submitting his first application, Mr. Fulton applied for another one.  *See* DI 55-2 ¶¶ 23-25.  The second application — dated November 30, 2009 — designated his daughter, Ms. Fulton, and brother, Mr. Harper (together, Fulton/Harper), "as co-primary beneficiaries."  *Id.* ¶ 24; *see* DI 55-3 Ex. K.  Brighthouse denied Mr. Fulton's second application on February 26, 2010.  *See* DI 55-2 ¶¶ 29-30; *see also* DI 55-3 Ex. M (citing "information received from [a] medical care provider" as reason for denial).

Several errors created confusion between the two applications.  *See* DI 55-2 ¶¶ 22-35.  Claims agent Lamont Brown incorrectly submitted the second application (dated November 30, 2009) under the same "case number" as his first application (dated November 4, 2009).  *See id.* ¶¶ 23, 37.  Mr. Brown flagged the error shortly after it happened.  *See id.* ¶ 25.[4]  "[F]or reasons unknown," Brighthouse never formally cancelled the second application in its system.  *Id.* ¶ 27.  So, the second application appeared as "a successive, superseding application" in Mr. Fulton's file.  *Id.* ¶ 32.

Brighthouse did not uncover the error until discovery in this case.  *See id.* ¶¶ 36-42.[5]  Mr.

---

[3] MetLife Investors USA Insurance Company, which later became Brighthouse, issued Mr. Fulton's policy.  *See* DI 55-3 Ex. A.

[4] Mr. Duncan swore that Brighthouse's "systems notes" show Mr. Brown communicated the submission error.  DI 55-3, Certification of Matthew Duncan, ¶ 23.  And Brighthouse's systems' notes reflect that Mr. Brown sent the following message to Brighthouse on January 26, 2010: "I just scanned a new app, *ignore it please do not change the bene to reflect it.  Sorry for confusion.*"  *Id.* Ex. L (emphasis added).

[5] Mr. Duncan swore that he searched through Brighthouse's "electronic records using [Mr. Fulton's] name and date of birth" to determine who the correct beneficiary is before Brighthouse filed its complaint.  DI 55-3, Certification of Matthew Duncan, ¶ 31.  The "separateness" of the two applications did not become clear until Mr. Brown was deposed and

Brown testified that "the first application was specifically designed with Antoinette Walker being the beneficiary," and "a separate policy and application" was intended for Fulton/Harper. *See* DI 55-3 at 104 (ECF) (Mr. Brown's deposition testimony). Mr. Brown referred to a February 26, 2010 letter sent by Brighthouse declining Mr. Fulton's second life insurance policy application. *See* DI 55-2 ¶ 39.[6] The deposition led Brighthouse to re-search its internal systems and "locate a separate file pertaining to the second, later-submitted application, which was denied." *Id.* ¶ 40.

While the mix-up was still undiscovered, in February 2020, Mr. Fulton died "as the result of gunshot wounds." *Id.* ¶ 12. "[H]is death was ruled a homicide." *Id.* His policy's death benefit became due. *See id.* ¶ 13.

But because Brighthouse never cancelled Mr. Fulton's second application, its system reflected that Fulton/Harper were the policy's co-beneficiaries. *Id.* ¶¶ 14, 31. As such, Brighthouse sent Fulton/Harper forms to claim Mr. Fulton's death benefit on June 15, 2020, and Fulton/Harper made their claims. *See id.* ¶¶ 15-16; DI 56-6 (forms sent by Brighthouse to Fulton/Harper); DI 55-3 Ex. G, I (Fulton/Harper's claims).[7] Ms. Walker-Walton also claimed

---

proffered the February 26, 2010 declination-of-coverage letter, which allowed Mr. Duncan to "reconcile the discrepancies in Brighthouse's systems." *Id.* ¶¶ 32-33.

[6] *See also* DI 55-3 at 104 (ECF); *id.* at 111-12 (ECF) (letter from Mr. Brown to Mr. Fulton stating that Brighthouse was "unable to offer [him] any life insurance coverage due to information received from [a] medical provider"); DI 56-4 at 28-29 (ECF) (Ms. Walker-Walton testifying that the second life insurance policy application intended for Fulton/Harper was denied).

[7] Ms. Fulton submitted her claim form on June 19, 2020, *see* DI 55-3 Ex. G, and Mr. Harper submitted his on July 26, 2020, *see id.* Ex. F. And Fulton/Harper received their claim forms only a few days after Mr. Brown called Brighthouse regarding the policy's death benefit. *See* DI 56 Ex. A (June 11, 2020 call from Mr. Brown to Brighthouse representative).

the death benefit.  *See* DI 55-2 ¶ 17.[8]

The adversarial claims prompted Brighthouse to figure out whether it should pay Fulton/Harper.  *See* DI 55-3 Ex. J.  As part of its investigation, Brighthouse "attempted to confirm with law enforcement whether" it ruled out Fulton/Harper as suspects in Mr. Fulton's homicide.  DI 55-2 ¶ 18.  A Philadelphia Police Department detective told a Brighthouse employee that it did not rule out Fulton/Harper.  *See* DI 55-3 Ex. J (July 17, 2020 email referencing Philadelphia Police Department detective).  Therefore, Brighthouse was of the view that it could not pay out the death benefit to Fulton/Harper.  *See id.*[9]  And Fulton/Harper testified that they did not know whether the police department was still investigating Mr. Fulton's death.  *See* DI 55-2 ¶ 46.  The investigation has effectively "gone cold."  *See id.* ¶¶ 46-51.

Further, Brighthouse's "good faith searches of company records" at the time did not reveal another case file for Mr. Fulton's second policy application.  *See id.* ¶¶ 33-35.  And Ms. Walker-Walton continued to maintain that she is the sole beneficiary under Mr. Fulton's policy.  *See* DI 55-3 Ex. I.  So, absent further investigatory developments — and ready to pay the death benefit — Brighthouse filed an interpleader action against Ms. Walker-Walton and Fulton/Harper.  *See generally* DI 1.

## II.    **Brighthouse's Motion for Summary Judgment**

Brighthouse's original complaint requested only that we require the defendants settle —

---

[8] *See also* DI 57-6 at 52-54 (ECF) (copy of July 22, 2020 claim to death benefit filed by Ms. Walker-Walton); DI 55-3 Ex. H (same).

[9] *See* 20 Pa. C.S. § 8802 ("No slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent, but such property shall pass as provided in the sections following.").

among themselves — who gets Mr. Fulton's death benefit. *See id.* But Brighthouse moved for leave to amend its complaint after discovery revealed the administrative error that it believes is dispositive of who is the proper beneficiary. *See* DI 37. We granted Brighthouse's motion, and it added a declaratory judgment cause of action. *See* DI 42.

Now, Brighthouse claims that Ms. Walker-Walton "is the sole beneficiary." *See id.* at 9. Ms. Walker-Walton and Fulton/Harper each answered Brighthouse's amended complaint and counterclaimed. *See* DI 45, 51.[10] Their counterclaims assert the same causes of action: breach of contract, and statutory bad faith[11] under Pennsylvania law. *See generally* DI 45, 51.[12] They claim that Brighthouse's failure to pay the death benefit to either Ms. Walker-Walton or

---

[10] Ms. Walker-Walton did not file her counterclaim against Brighthouse until one month after she answered Brighthouse's amended complaint. *See* DI 51; *see also* Fed. R. Civ. P. 13(a)(1) (emphasis added) ("A pleading must state as a counterclaim any claim that — *at the time of its service* — the pleader has against an opposing party if the claim arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim . . . ."); *Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp.*, 589 F.2d 1214, 1220 (3d Cir. 1978) ("A compulsory counterclaim not raised in the first action is barred in subsequent litigation.").

Also, Ms. Walker-Walton crossclaimed against Fulton/Harper for tortious interference with the Brighthouse contract. *See* DI 44 at 11-13. Fulton/Harper have not responded to Ms. Walker-Walton's crossclaim, despite us ordering a response. *See* DI 53 ¶ 1.

[11] Brighthouse argued in its summary judgment motion that Ms. Walker-Walton failed to refer to the proper statute to assert a statutory bad faith claim. *See* DI 55-1 at 14. To cover all bases, Brighthouse explained that its arguments against Fulton/Harper's *statutory* bad faith counterclaim apply to Ms. Walker-Walton's counterclaim, to the extent she intended on bringing a statutory bad faith claim and not a common law bad faith claim. *See id.* at 14 n.4.

Brighthouse is correct that Ms. Walker-Walton did not specify the type of bad faith counterclaim, *see* DI 51 at 5-6, but Ms. Walker-Walton clarified in her opposition that she intended to assert a "statutory [c]laim for [b]ad [f]aith under 42 Pa. C.S. § 8371." DI 57 at 12. For our purposes, we will treat Ms. Walker-Walton's cause of action as a statutory bad faith counterclaim.

[12] Fulton/Harper also brought a cause of action under Pennsylvania's Unfair Trade Practices and Consumer Protection Law. But they said that they want to voluntarily dismiss the claim. *See* DI 56 at 12.

Fulton/Harper is a breach of its contractual responsibilities. *See* DI 45 at 14; DI 51 at 5. And both allege that Brighthouse's "unfounded refusal to pay" evidences bad faith. DI 45 ¶ 36; DI 51 ¶ 36.

Brighthouse has moved for summary judgment on its own claims and defendants' counterclaims. *See* DI 55. It argues "[t]here is simply no evidence" that "anyone other than" Ms. Walker-Walton is entitled the death benefit. DI 55-1 at 21-22. Brighthouse submits that, even if a fact issue remains as to who gets the death benefit, we should allow — as an alternative — for it to deposit the death benefit and obtain interpleader relief. *See id.* at 22-27.

In response, Ms. Walker-Walton agrees with Brighthouse that she is the sole beneficiary. *See* DI 57 at 10. But she disagrees with Brighthouse on her counterclaims, arguing that Brighthouse should have paid her the death benefit years ago. *See id.* at 11-15. According to Ms. Walker-Walton, "[a] reasonable review of [Brighthouse's] own records would have shown that [she] was the beneficiary and entitled to the death benefit in early 2020." *Id.* at 14.

Fulton/Harper disagree with Brighthouse and Ms. Walker-Walton. *See* DI 56 at 7-9. Fulton/Harper argue that two genuine disputes of material facts preclude summary judgment: first, whether they or Ms. Walker-Walton are the correct beneficiaries, *see id.* at 7-8; second, whether Mr. Brown — Ms. Walker-Walton's claims agent — had biased deposition testimony that calls into question the correct beneficiary, *see id.* at 8-9. Fulton/Harper also argue that the evidence precludes summary judgment on their counterclaims.

We have subject-matter jurisdiction over Brighthouse's claims and defendants' counterclaims. *See* 28 U.S.C. §§ 1332, 1367; DI 42 ¶¶ 1-6.[13]  We heard oral argument on Brighthouse's motion. *See* DI 60.  The motion is ripe for disposition.

For the reasons explained below, we grant summary judgment on Brighthouse's claim for declaratory relief.  We also grant Brighthouse summary judgment on defendants' counterclaims.

## III.    <u>Standard of Review</u>

Federal Rule of Civil Procedure 56 requires courts to grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is '"genuine" . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *PIM Brands Inc. v. Haribo of Am. Inc.*, 81 F.4th 317, 320 (3d Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Parties "asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to evidence in the record.  Fed. R. Civ. P. 56(c)(1).

---

[13] In addition to diversity jurisdiction, Brighthouse alleges that we have subject-matter jurisdiction over its request (in the alternative) for interpleader relief under 28 U.S.C. § 1335.  DI 42 ¶ 6.  Brighthouse says that it did not "originally plead jurisdiction under the Interpleader Statute" because it did not think diversity of citizenship existed between adverse claimants.  *See* DI 55-1 at 23 n.7; *see also* § 1335(a)(1).

Regardless, Brighthouse's amended complaint alleges that we have subject-matter jurisdiction proceeding under Federal Rule of Civil Procedure 22 — not just statutory interpleader.  An independent basis for subject-matter jurisdiction means we can adjudicate Brighthouse's request for declaratory relief.  *See Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) ("T[he] [Declaratory Judgment] Act does not itself create an independent basis for federal jurisdiction but instead provides a remedy for controversies otherwise properly within the court's subject matter jurisdiction.").

And "for a factual dispute to be material, its resolution must have the potential to affect the outcome of the suit." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 203 (3d Cir. 2022).

## IV.    <u>Analysis</u>

The judgment that Brighthouse seeks (and Ms. Walker Walton supports) is declaring Ms. Walker-Walton the sole beneficiary of Mr. Fulton's life insurance policy.  Fulton/Harper fail to cite to evidence in the record showing a genuine dispute of material fact regarding Brighthouse's administrative error, or, who Mr. Fulton designated as the beneficiary of his life insurance policy.  Thus, we grant Brighthouse declaratory relief.  We also grant Brighthouse summary judgment on the defendants' counterclaims.

### A.  **The undisputed material facts show Ms. Walker-Walton is the sole beneficiary of the life insurance policy.**[14]

Fulton/Harper make two attempts to forestall summary judgment.  Both are unavailing.

First, Fulton/Harper focus heavily on Mr. Fulton's purported "last written expression of intent."  DI 56 at 8.  They argue that naming them co-beneficiaries "give[s] effect" to Mr. Fulton's intentions.  *Id.*  The argument fails to rebut the undisputed material facts that explain, among other things, (1) Brighthouse's administrative error, (2) how Fulton/Harper came to be incorrectly listed as co-beneficiaries of Mr. Fulton's policy, and (3) how Brighthouse denied Mr. Fulton's second application, where they were listed as co-beneficiaries.  Claiming — without meaningful factual and legal support[15] — that we must abide by Mr. Fulton's intentions is not

---

[14] Because we grant Brighthouse summary judgment on its declaratory judgment cause of action, we express no opinion on its request in the alternative for interpleader relief.

[15] Fulton/Harper's only legal support for their argument is a Third Circuit decision summarizing Pennsylvania law's "fundamental rule in interpreting the meaning of a contract." *See Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 243 (3d Cir. 2008) (quoting *Murphy*

enough to generate a genuine dispute of material fact.

Second, Fulton/Harper question the truthfulness of Mr. Brown's deposition testimony that led to Brighthouse doubling back and discovering the administrative error.  *See* DI 56 at 8-9. Fulton/Harper argue that a factfinder must assess Mr. Brown's credibility before granting declaratory judgment.  Not so.  Even disregarding Mr. Brown's deposition testimony, the evidence provides an ample basis to conclude that Ms. Walker-Walton is the policy's sole beneficiary.

We agree with Brighthouse (and Ms. Walker-Walton) that Ms. Walker-Walton is the correct beneficiary.  We grant Brighthouse's declaratory relief claim.

### B.  Fulton/Harper's breach-of-contract counterclaim fails because they neither contracted with Brighthouse nor were beneficiaries of the life insurance policy.[16]

"Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'"  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058

---

*v. Duquesne Univ.*, 777 A.2d 418, 428-30 (Pa. 2001)).  *Norwin* does not cure Fulton/Harper's biggest problem: the record shows that they are not parties to or beneficiaries of Mr. Fulton's life insurance policy.

[16] Granting summary judgment on Brighthouse's declaratory judgment claim means that Ms. Walker-Walton's breach-of-contract counterclaim fails.  At oral argument, her counsel agreed.  If Ms. Walker Walton is the correct beneficiary, it follows that Brighthouse did not breach a legal duty owed to her, and Ms. Walker-Walton did not suffer resultant damages.  Not to mention that she alleges Brighthouse owes her $1,000,000 (the death benefit) in contract damages.  *See* DI 51 ¶¶ 32-35.

Therefore, we grant Brighthouse's summary judgment motion with respect to Ms. Walker-Walton's breach-of-contract counterclaim.

(Pa. Super. Ct. 1999)).[17]  And "[p]rivity of contract must exist for a defendant to be liable for a breach.  In other words, both parties must be parties to the contract."  *Three Rivers Hydroponics, LLC v. Florists' Mut. Ins. Co.*, 2023 WL 5554644, at *3 (3d Cir. Aug. 29, 2023) (footnote omitted).

"[T]he exceptional circumstance" where a party not in privity can state a breach-of-contract claim is when that party "is a third-party beneficiary."  *Id.*  "[U]nder Pennsylvania law, a party becomes a third party beneficiary 'only where both parties to the contract express an intent to benefit the third party in the contract itself.'"  *Tredennick v. Bone*, 323 F. App'x 103, 104 (3d Cir. 2008) (quoting *Scarpitti v. Weborg*, 609 A.2d 147, 150 (Pa. 1992)).

Here, nothing in the record indicates that Fulton/Harper are either parties to or third-party beneficiaries of Mr. Fulton's life insurance policy.  Fulton/Harper's counsel essentially admitted at oral argument that an adverse decision for them on Brighthouse's declaratory judgment claim negatively affects their breach-of-contract counterclaim.  Thus, their counterclaim fails.

### C.  Fulton/Harper's and Ms. Walker-Walton's statutory bad faith counterclaims fail.

Pennsylvania allows for the award of punitive damages against insurers if a court "finds that the insurer has acted in *bad faith* toward the insured."  42 Pa. C.S.A. § 8371 (emphasis added).  "Although the term 'bad faith' is not defined by the Pennsylvania bad faith statute, Pennsylvania courts have interpreted it as 'any frivolous or unfounded refusal to pay proceeds of a policy.'"  *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994)); *see*

---

[17]  No party disputes that Pennsylvania law applies for defendants' counterclaims.

*Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999) ("Bad faith is a frivolous or unfounded refusal to pay, lack of investigation into the facts, or a failure to communicate with the insured.").  "While successful bad faith claims do not need to show fraudulent behavior, negligence or bad judgment will not support a bad faith claim."  *Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019).

The Third Circuit uses the Pennsylvania Superior Court's two-part framework in *Terletsky* to determine whether an insured can prove a statutory bad faith claim.  *See Wolfe v. Allstate Prop. & Cas. Ins. Co.*, 790 F.3d 487, 498 (3d Cir. 2015) (citing *Terletsky*, 649 A.2d 680).  "To recover under section 8371, a [claimant] must show by clear and convincing evidence that [1] the insurer did not have a reasonable basis for denying benefits under the policy[,] and that [2] the insurer knew or recklessly disregarded its lack of reasonable basis in denying the claim."  *Id.*

"[B]ad faith must be proven by clear and convincing evidence and not merely insinuated."  *Terletsky*, 649 A.2d at 688.  As such, "[t]he evidentiary burden on a [party] *opposing* a summary judgment motion" for a statutory bad faith claim "is 'commensurately high.'"  *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 191 (3d Cir. 2021) (emphasis added) (quoting *Pilosi*, 393 F.3d at 367); *see Pilosi*, 393 F.3d at 367 ("[T]he plaintiff's burden . . . is commensurately high in light of the substantive evidentiary burden at trial.").  "By contrast, all that is needed to defeat a claim of bad faith under § 8371 is evidence of a reasonable basis for the insurer's actions or inaction."  *Gibson*, 994 F.3d at 191.

Starting with Fulton/Harper, Brighthouse argues that they have no standing because they are neither the "insured" nor the beneficiaries under Mr. Fulton's policy.  *See* DI 55-1 at 15-17;

12

DI 58 at 5.  Fulton/Harper do not confront Brighthouse's standing argument in their response.

Because the undisputed facts demonstrate that Fulton/Harper are not beneficiaries, *see supra*

Section IV.A, they lack standing.  *See Davin v. Davin*, 842 A.2d 469, 473 (Pa. Super. Ct. 2004)

(holding party has no standing for statutory bad faith claim because she was "not the insured" or

"a beneficiary" of an insurance policy); *Elican v. Allstate Ins. Co.*, 2017 WL 6525781, at *5

(E.D. Pa. Dec. 21, 2017) ("To have standing to pursue a bad faith claim, the party must be an

insured or a third-party beneficiary.").[18]

Next, Ms. Walker-Walton.  Brighthouse argues[19] that Ms. Walker-Walton's claim fails

under either prong of the *Terletsky* framework.  *See* DI 55-1 at 17-19; DI 58 at 5-9.  In response,

Ms. Walker-Walton says that — now, with the benefit of hindsight — the evidence demonstrably

shows she was always the sole beneficiary.  *See* DI 57 at 14.  She argues that Brighthouse never

had a basis for denying her the death benefit because the police never named her as a suspect for

Mr. Fulton's homicide.  *See id.*  And she says that fact discovery has revealed Brighthouse's

"fail[ure] to perform any level of investigation once it discovered competing claims to the

policy."  *Id.*

Even assuming, *arguendo*, that Brighthouse did not have a reasonable basis for delaying

---

[18] It is unnecessary for us to hold — and we do not hold — that a party misled to believe
it is a beneficiary could never maintain a bad faith claim.  That is simply the outcome this record
warrants.
      And because Fulton/Harper do not have standing to pursue their bad faith counterclaim,
we need not address their argument regarding Brighthouse's purported breach of the
Pennsylvania Insurance Code.  *See* DI 56 at 11-12 (citing 40 P.S. §§ 467, 621).

[19] As mentioned, Brighthouse argued that Ms. Walker-Walton's *common law* bad faith
claim fails.  *See* DI 55-1 at 14.  But Ms. Walker-Walton clarified in her opposition that she is
bringing a *statutory* bad faith claim, *see supra* n.11, so Brighthouse replied that its statutory bad
faith arguments apply to Ms. Walker-Walton with equal force, *see* DI 58 at 5.

or denying[20] the payment of the death benefit, Ms. Walker-Walton's claim fails under prong two of *Terletsky*.  There is no evidence that Brighthouse — during its "investigation and other conduct in handling the claim" — engaged in "conduct that certainly . . . 'import[s] a dishonest purpose.'"  *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 524 (3d Cir. 2012) (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)).  The Third Circuit has said that "mere negligence or aggressive protection of an insurer's interest is not bad faith" when an insured predicates a bad faith claim on the failure to properly investigate or handle a claim.  *Id.*

    *Post*'s analysis of statutory bad faith claims is instructive.  In *Post*, the Third Circuit granted an insurer's summary judgment motion on a lawyer's statutory bad faith claim.  *See id.* at 525.  The lawyer argued, in relevant part, that his insurer acted in bad faith by "ignoring

---

[20] Brighthouse argues that it is not denying Mr. Walker-Walton of a benefit under *Terletsky* — in fact, the contrary.  *See, e.g.*, DI 58 at 6.  Ms. Walker-Walton appears to characterize the "denial" as the delay between her attempt to claim the death benefit and her ability to actually obtain it.  *See* DI 57 at 14.  What constitutes the "denial" may not matter as much because the gist of Ms. Walker-Walton's argument is Brighthouse's lack of effort towards *investigating* the correct beneficiary.  The Third Circuit has said that parties may bring statutory bad faith claims "based largely on behavior beyond . . . denial of the claim."  *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 F. App'x 424, 435 (3d Cir. 2007); *see Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 524 (3d Cir. 2012) (stating it "is no doubt true" that an insurer's actions can be unreasonable despite a finding that the insurer had no duty to cover); *see also Ferguson v. USAA Gen. Indem. Co.*, 334 F.R.D. 407, 410 (M.D. Pa. 2019) (quoting *Frog, Switch & Mfg. Co.*, 193 F.3d at 751 n.9) ("For example, an insurer 'refusing to pay without a reasonable investigation of all available information' would be held liable under Section 8371, even if they were ultimately correct in denying coverage."); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004) (citation omitted) (stating "the alleged bad faith need not be limited to the literal act of denying a claim").

    True, "'cases in which an insurer can be liable for bad faith' even though there was no duty to provide coverage" are "exceedingly rare."  *Post*, 691 F.3d at 524 (quoting *Gallatin Fuels*, 244 F. App'x at 435); *see also T.H.E. Ins. Co. v. Davis*, 54 F.4th 805, 825 (4th Cir. 2022) (applying Pennsylvania law and stating that "in 'exceedingly rare' circumstances, an insurer may act in bad faith by failing to conduct a reasonable investigation").  But for our purposes, Ms. Walker-Walton's claim rises and falls with the lack of clear and convincing evidence demonstrating a dishonest purpose in its investigation of the correct beneficiary.

communications from the insured, violating its own policies and procedures . . . and keeping crucial information from [the person who] made his coverage determination." *Id.* at 524. The Third Circuit distinguished between an insurer making misrepresentations and acting dishonestly when investigating a claim, versus protecting its own interests. *See id.* And the Third Circuit further separated the lawyer's claim challenging "largely benign claims-handling conduct," from an insurer "reflexively den[ying] coverage" without a proper investigation. *See id.* at 525 (contrasting *Giangreco v. U.S. Life Ins. Co.*, 168 F. Supp. 417 (E.D. Pa. 2001)). The record reflected that the insurer "did not automatically deny coverage" and had a "reasonable basis" for denying its coverage throughout its investigation. *Id.*

Here, nothing suggests that Brighthouse made intentional misrepresentations or acted dishonestly toward Ms. Walker-Walton when handling the claims to Mr. Fulton's death benefit. Nor do the facts show that Brighthouse immediately denied Ms. Walker-Walton the death benefit[21] without investigation. Rather, Brighthouse has provided evidence of the reasons for its actions and inaction. *See Gibson*, 994 F.3d at 191. The undisputed facts show how Mr. Brown submitted the second life insurance policy application under Mr. Fulton's first case number, how Mr. Brown tried communicating the mistake to Brighthouse, how Fulton/Harper incorrectly remained as successive, co-beneficiaries of Mr. Fulton's policy, and how Brighthouse filed an interpleader action to avoid the risk of multiple liability. *See* DI 58 at 6-7. Brighthouse's own "record-keeping issue[s]" may have caused the dispute, but on this record, Brighthouse was, at worst, negligent in investigating the competing claims. *See id.* at 8. That is not enough to prove

---

[21] The opposite happened; Ms. Walker-Walton will receive the death benefit.

a statutory bad faith claim based on a failure to adequately investigate or handle competing claims.

Moreover, Ms. Walker-Walton lacks evidence showing that Brighthouse's concern over the suspects of Mr. Fulton's homicide were pretextual.  Rather, the record reflects that Brighthouse did not want to risk paying Fulton/Harper before they were ruled out as homicide suspects.  *See* DI 55-3 Ex. J; DI 58 at 9.[22]  Further, nothing shows that Brighthouse disregarded Ms. Walker-Walton's claim to Mr. Fulton's death benefit.  The record instead indicates that the police investigation had not closed, and the investigation went "cold."

Therefore, "[e]ven if [Brighthouse's] claims-handling processes were not ideal, there is no evidence in the record — let alone clear and convincing evidence — to show that [Brighthouse's] purported mishandling of [Ms. Walker-Walton's] claim was motivated by a dishonest purpose or ill will."  *Post*, 691 F.3d at 525.[23]

## V.    Conclusion

Without a genuine dispute of material fact regarding the beneficiary of Mr. Fulton's life insurance policy, we grant Brighthouse summary judgment on its declaratory relief claim.  Ms.

---

[22] And Brighthouse's investigation after Mr. Fulton's death did not uncover the application submission error that was discovered during fact discovery.  Thus, Brighthouse had no reason to think — at the time it communicated with the Philadelphia Police Department on July 17, 2020 — that Ms. Walker-Walton was the correct beneficiary.  *See* DI 55-3 Ex. J (July 17, 2020 email referencing conversation with Philadelphia Police Department); *id.* Ex. H (Ms. Walker-Walton's claim form).

[23] Like Fulton/Harper, Ms. Walker-Walton makes passing reference to Brighthouse's purported failure to "maintain a copy of [Mr. Fulton's] [p]olicy" in violation of the Pennsylvania Insurance Code.  DI 57 at 15; *see id.* at 9.  The argument is meritless.

Walker-Walton is the policy's sole beneficiary.  And we grant Brighthouse's summary judgment motion with respect to the defendants' counterclaims.[24]

---

[24] We also dismiss Ms. Walker-Walton's crossclaim against Fulton/Harper with prejudice for failure to prosecute.  *See* DI 44 at 11-13.